The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time in question deceased employee and defendant-employer were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between deceased employee and defendant-employer.
3. Defendant-employer was a qualified self-insured.
4. Without inclusion of the average annual value of the employer's contribution to the employee's health and dental benefits plan and to his pension fund, the deceased employee earned an average weekly wage of $524.45 at the time of his death.
5. On May 4, 1994 deceased employee sustained an injury by accident arising out of and in the course of his employment and died as a result thereof.
6. The sole surviving dependent of deceased employee was his wife, plaintiff Lorena Turner. There were no other persons wholly or partially dependent upon the deceased employee for their support at the time of his death.
7. The average annual value of the employer's contribution to the employee's health and dental benefits plan was $2,381.00.
8. The average annual value of the employer's contribution to the employee's pension fund was $270.00.
9. Because they were backed by the North Carolina Guaranty Fund there is no risk that plaintiff will fail to receive the 400 weeks of death benefits otherwise due her.
ADDITIONAL STIPULATIONS
1. Plaintiff's verified answers to defendant's interrogatories, which have been denominated Plaintiff's Exhibit Number One.
2. The August 2, 1994 letter of plaintiff to the North Carolina Industrial Commission regarding her position, which has been denominated Plaintiff's Exhibit Number Two.
3. Two pages of medical records from Dr. Bernardo, which have been denominated Plaintiff's Exhibit Number Three.
4. A one page medical record of Dr. Sekaran, which has been denominated Plaintiff's Exhibit Number Four.
* * * * * * * * * * * * *
The Full Commission adopts the findings of Fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The stipulated values of the employer's contribution to the employee's health and dental benefit plan and pension benefit fund should not be included in determining the average weekly wage of the same employee for the following reasons:
In the first place, the North Carolina Industrial Commission has historically not included "fringe benefits" in determining average weekly wage, which according to Professor Larson is a majority rule in the United States.
In the second place, there is no evidence that the employer's contribution to the employee's health and dental benefit plan and pension fund were a part of the employee's wage contract in lieu of wages, which (wages) are customarily determined by and are unique to the particular nature of the employee's job and includes such factors as their education and skill required to perform it and are thus individually based; while the type of fringe benefits involved are not; but rather, provided across-the-board to all employees and are ordinarily the same without regard to the particular nature of their work.
In the third place, unlike actual wages and such allowances as company cars and room and board, which are taxable, these type of fringe benefits are not.
In the fourth place, although the parties stipulated the average annual value of the employer's contribution to the employee's health and dental benefit plan, which was assumably based on the amount of the employer's contribution; not only is it difficult to place a precise value on the type of fringe benefits involved, but the majority of the states that allow inclusion of insurance provided by the employer base their value on replacement cost of the insurance rather than the employer's contribution.
In the fifth place, in the majority of the states that do include contributions to pension plans in determining average wage, they only recognize pension funds that are vested; however, there is no evidence that the deceased employee's pension plan was vested.
In the sixth place, it is neither fair nor reasonable to include the value of a health and dental plan in determining an employee's average weekly wage that covers not only the employee, but his spouse, who was not party to the employment contract.
In the seventh place, unless and until claims are made against the health and dental plan, it really has no value other than a contingent one dependent upon the health of the employee and, in this case, also his spouse.
In the eight place, these types of fringe benefits do not form a part of the employee's standard of living; but rather, an employee depends on his actual wages and other non-contingent benefits such as the use of a company car or room and board to live.
2. Plaintiff is a 58 year old female who as of the date of her husband's death was not unable to support herself because of physical or mental disability; but rather, had been employed by J. C. Penney for 15 years and was then a customer service representative resulting in her being entitled to a maximum of 400 weeks of compensation benefits under the Workers' Compensation Act whether she became totally disabled or not subsequent to her husband's death.
On July 31, 1994 plaintiff resigned from her job at J.C. Penney and contends that she was forced to because of developing disabling emotional problems dealing with her husband's death. Although the stipulated medical records unquestionably establish that plaintiff was depressed because of her husband's death; they do not specifically address the issue of whether the same emotional problems were disabling, but assuming arguendo they were plaintiff could have filed a claim for Social Security Disability Benefits based on her loss of income at J.C. Penney and would have been free to use or invest these benefits as she chose to; however, for whatever reason, which would include the possibility that the medical evidence would not support one, she has not yet filed such a claim.
3. Plaintiff is not entitled to receive a lump sum award of the 400 weeks of death benefits otherwise due her unless this is an unusual case where the Industrial Commission finds it would be in her best interest to receive such award because lump sum awards are contrary to the manifest purpose of the Workers' Compensation Act and should only be allowed in those limited circumstances.
4. The purpose of the Workers' Compensation Act is to provide guaranteed periodic income benefits replacing a portion of the earnings lost by an injured employee, and when the same employee is killed, to provide the employee's dependents with the replacement income necessary for their daily living expenses for a set period of time. In the instant case the weekly compensation payments that plaintiff would otherwise be due are sufficient to cover her regular living expenses during the 400 week period based on their current levels, which is consistent with the stated purpose of the Workers' Compensation Act.
5. The reason that plaintiff wants to receive a lump sum payment of the death benefits due is not because the weekly payments are insufficient to maintain her current living expenses or there is some type of outstanding debt that could not be paid unless the death benefits were awarded on a lump sum basis such as the mortgage in the Harris vs. Lee Paving Company case, 47 N.C. App. 348
(1980)); but rather, she wants to invest the monies in an annuity similar to two other ones that she had already invested the $180,000.00 received from various life insurance policies as a result of her husband's death and will pay approximately the same weekly wage during her life time as opposed to for a maximum of seven plus years — otherwise she would no longer receive compensation benefits after that seven plus year period and would be left with nothing, which presumes that she will spend her weekly compensation benefits for her daily living expenses during this period, which is the very purpose of providing the benefits for a set period of time in the first place, rather than saving and investing them and living off the income of her other two annuities and/or filing a Social Security Disability claim and living off those benefits.
6. Plaintiff is not burdened with debt; but rather, has assets of almost $300,000.00 independent of her potential Social Security Disability claim, which includes a mortgage-free home, a car, $5,500.00 in a credit union account, $500.00 in a checking account, almost $30,000.00 in a retirement account and $180,000.00 in two annuity plans similar to the further one she wants to fund with a lump sum award of her death benefits. If she can obtain her death benefits in lump sum and invest it in this particular type of annuity plan; then every other claimant will be asking to do the same thing; however, in most jurisdictions merely because an employee wants a lump sum award for investment purposes or can obtain a better return elsewhere is not viewed as the type of unusual situation where it has been held to be in an employee's best interest to recover a lump sum award unless there are some additional factors that would justify a lump sum such as the need of additional income, which has not been shown, otherwise lump sums would be granted in almost every instance.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. For the reasons stated in the above Findings of Fact, the value of the employer's contribution to the employee's health and dental benefit plan and pension fund are not includable in the average weekly wage of the deceased employee because they were not allowances made to an employee as a specified part of his wage contract in lieu of wages. N.C. Gen. Stat. § 97-2 (5).
2. For the reasons stated in the above Findings of Fact this is not an unusual case where it would be in the best interest of plaintiff to receive the involved death benefits award on a lump sum basis. N.C. Gen. Stat. § 97-44. Harris vs. Lee PavingCompany, (supra). Larson, Workers' Compensation Law, Section82.70.
3. Plaintiff, Lorena Turner, deceased employee's widow and his surviving whole dependent is entitled to 400 weeks of compensation at a rate of $349.45 per week commencing as of May 4, 1994.
4. In an amount not exceeding $2,000.00 defendant is obligated to pay the resulting burial expenses of deceased employee. N.C. Gen. Stat. § 97-38.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for lump sum payment of the involved award and inclusion of the value of the employer's contribution to the employee's health and dental benefits plan and pension fund in determining the average weekly wage of the deceased employee is DENIED and as a result plaintiff, Lorena Turner, widow and surviving whole dependent of the deceased employee is entitled to 400 weeks of compensation at a rate of $349.65 per week commencing as of May 4, 1994. Such compensation as has accrued hereunder shall be paid in lump sum, without commutation. At this time plaintiff's counsel has deferred his fee.
2. In an amount not exceeding $2,000.00 defendant shall pay the resulting burial expenses of the deceased employee when presented with a statement for the same.
3. Defendant shall bear the costs.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ THOMAS J. BOLCH COMMISSIONER